UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JESSE WAYNE MORRIS** | * | **CIVIL ACTION NO.   09-1833** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## BACKGROUND & PROCEDURAL HISTORY

This matter arises from the termination of benefits to Jesse Wayne Morris ("Morris"), based on a finding that he was no longer disabled as of December 1, 2007. (Tr. 42-44). Morris began receiving SSI April 1, 1989, at the age of three months, due to congenital heart disease, which met the listing of C.F.R. Part 404, Subpt. P, App. 1, Listing 104.04A. Morris' disability was continued on August 1, 2000, after a previous determination that plaintiff's disability should cease due to medical improvements. (Tr. 36, 39). Upon turning 18 years of age on January 15, 2007, a required review determined that Morris was no longer disabled as of December 1, 2007. (Tr. 42-46). Morris' mother, Deanna Reppond, requested reconsideration of the termination,

which was affirmed in a disability hearing decision on March 10, 2008. (Tr. 48, 49-57). Morris, through Ms. Reppond, thereafter requested a hearing, which was held on March 17, 2009, before Administrative law Judge ("ALJ") W. Thomas Bundy. (Tr. 20-30, 47).

In an unfavorable decision issued on April 7, 2009, the ALJ determined that Morris retained the residual functional capacity ("RFC") to perform the full range of light work. (Tr. 15-16). The ALJ concluded that, as of October 1, 2007, Morris was no longer disabled in accordance with Rule 202.17 of the Medical-Vocational Guidelines. (Tr. 18). *See* C.F.R. Part 404, Subpt. P, App. 2, Rule 202.17. Morris, through Ms. Reppond, appealed the adverse decision to the Appeals Council. On August 14, 2009, however, the Appeals Council denied Morris' request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 3-4, 6-8).

On October 23, 2009, Morris sought review before this court. He alleges the following errors:

> (1)  Plaintiff did not receive a full and fair hearing because he did not knowingly and intelligently waive his right to counsel and was prejudiced by the ALJ's failure to develop a full and fair record.
>
> (2)  The ALJ's credibility finding is not based on substantial evidence.
>
> (3)  The Commissioner failed to sustain his burden of establishing that there is other work in the national economy that plaintiff can perform.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple

impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ANALYSIS

**I.      Waiver of Right to Counsel**

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003). A claimant is entitled to receive adequate notice of his right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D.Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)). After a claimant receives written notice prior to the hearing, "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Id.* at 621 (citing *Frank v. Chater*, 924 F.Supp. 416, 426 (E.D.N.Y.1996)).

Plaintiff argues that the ALJ failed to obtain a valid waiver of counsel. Plaintiff contends that the hearing transcript does not indicate that the ALJ ever specifically advised Morris that he has the right to representation; rather, plaintiff continues, the ALJ "merely stated" that Morris was "present in the hearing room, accompanied by his mother who will testify on his behalf." (Tr. 22). The ALJ further stated that Morris and Ms. Reppond were appearing "*pro se* and have agreed to do so." *Id.*

There is no dispute that prior to the hearing, plaintiff had numerous notices regarding his right to representation and how to secure representation, should he desire. (Tr. 44, 49, 101-106

5

(notices sent to plaintiff October 8, 2007; March 10, 2008; and February 2, 2009; all notices informed plaintiff that he had a right to representation and the necessary steps plaintiff could take to secure an attorney)). The notices informed plaintiff Morris of the various legal groups in existence that could possibly represent him free of charge. For example, the October 9, 2007 notice informing plaintiff that he no longer qualified for SSI explicitly states: "THERE ARE GROUPS THAT CAN HELP YOU FIND A LAWYER OR GIVE YOU FREE LEGAL SERVICES IF YOU QUALIFY. There are also lawyers who do not charge unless you win your appeal." (Tr. 44 (emphasis in original)). The same language is also provided in the Notice of Reconsideration, sent to plaintiff on March 10, 2008. (Tr. 49). The Social Security Administration provided plaintiff with its pamphlet entitled "Your Right to Representation" in advance of the hearing, on February 5, 2009. (Tr. 101-106). The pamphlet includes information concerning how plaintiff could seek representation, with a list of organizations that could represent plaintiff free of charge, if he qualified. (Tr. 105). The pamphlet also included information on how plaintiff could obtain a private, non-attorney representative to represent him at the hearing. (Tr. 106). Finally, the pamphlet detailed how much a representative could charge plaintiff, specifying that no more than 25 percent could ever be withheld from plaintiff's past-due benefits in order to pay a representative. (Tr. 104).

Additionally, Morris himself signed a form entitled "Waiver of Representation by the Claimant," acknowledging that he understood his right and wished to proceed without representation. (Tr. 237). In the waiver–signed the date of the hearing, March 17, 2009–Morris further acknowledged receiving a list of organizations that provide legal services prior to receiving the notice of hearing. *Id.*

However, whether Morris validly waived his right to an attorney at the hearing is unclear. As stated *supra*, the ALJ stated in his opening remarks that plaintiff and his mother "appear *pro se* and have agreed to do so." (Tr. 22). This is the only mention of plaintiff's right to counsel anywhere in the transcript. There is no indication whether the ALJ spoke with plaintiff concerning his right to counsel prior to going on the record. While on the record, the ALJ did not ask plaintiff whether he had received the notices in the mail concerning his right to representation. The ALJ did not ask plaintiff whether he understood the information contained in those notices regarding representation. *See* HALLEX I-2-6-52, 1993 WL 643033.

The importance of ascertaining whether plaintiff understood his right to counsel is magnified by the fact that it was Ms. Reppond, not plaintiff, who did most of the talking with the ALJ. As such, the undersigned is not convinced that plaintiff, of his own volition, validly waived his right to an attorney.

Of course, the inquiry does not end upon a showing that plaintiff did not voluntarily waive his right to counsel, as Morris must also show resulting prejudice. *Brock v. Chater*, 84 F.3d at 729 n1. In the absence of counsel, the ALJ has a heightened duty to develop the record. *Castillo v. Barnhart*, 325 F.3d at 552-53. To establish prejudice, a claimant must show point to "evidence that would have been adduced and that could have changed the result had [he] been represented by an attorney." *Castilllo, supra*. (citation omitted) (internal quotation marks omitted).

Here, plaintiff contends that he was prejudiced by his lack of counsel because the ALJ failed to fully develop the record. Doc. # 17, p. 10. Specifically, plaintiff argues that the ALJ failed to obtain the pertinent medical records from the previous administrative decision, issued in

2000. *Id.* at p. 11. However, if Morris wanted to obtain medical records from the earlier decision, or provide new records, he had an opportunity to submit additional evidence to the Appeals Council. The Notice of Decision attached to the ALJ's unfavorable decision advised plaintiff that he could submit new evidence to the Council with his request for review. (Tr. 10).

Plaintiff also argues that the ALJ failed to update the medical records generally, claiming that the records of his treating cardiologist, Dr. Terry King, are incomplete, and as such "the ALJ had a duty to develop the record instead of making medical determinations as to the claimant's abilities to do specific jobs." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

When the evidence from a treating physician is inadequate for the ALJ to determine whether a claimant is disabled, the ALJ may re-contact the treating physician to see if additional evidence is available. *See* 20 C.F.R. § 416.912(e). Here, as is set forth in more detail below, the additional records from Dr. King supplied by plaintiff in conjunction with his reply brief show that, had the ALJ contacted Dr. King, he would have obtained information which could have changed the result herein. Therefore, the plaintiff has shown prejudice and the ALJ's decision must be reversed.

Plaintiff further contends that, had he been represented by an attorney, the attorney would have obtained an opinion from Dr. King as to whether plaintiff met or equaled an adult cardiac listing, and could have requested a consultative psychiatric examination. Doc. # 17, pp.11-12. Of course, should this matter be remanded, plaintiff's counsel will be free to provide any additional evidence regarding the plaintiff's physical and mental condition.

**II.     Steps One, Two and Three**

The ALJ first noted that Step One of the sequential evaluation process is not used for redetermining disability at age 18, 20 C.F.R. 416.987(b). (Tr. 14). At Step Two, the ALJ found that Morris suffers from severe impairments of status post-tetralogy of Fallot[1] repair, and has a pacemaker. (Tr. 15). The ALJ concluded, however, that the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.925 and 416.926). (Tr. 16). In making the Step Three determination, the ALJ noted that Morris' condition had required surgery as a child, and subsequent implantation of a pacemaker. *Id.* The ALJ further noted that since Morris turned 18 years of age, he "has not had any episodes of cardiac decompensation, and his pacemaker rarely fires, indicating he maintains a normal cardiac rhythm." *Id.*

### III. Residual Functional Capacity

The ALJ next determined that Morris retains the RFC to perform the full range of light work. (Tr. 16).[2] The ALJ further determined that Morris:

> required the placement of a pacemaker several years ago. Since then, he has

---

[1] Tetralogy of Fallot is a congenital abnormality of the heart characterized by pulmonary stenosis, an opening in the interventricular septum, malposition of the aorta over both ventricles, and hypertrophy of the right ventricle. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

[2] Light work entails:
> ...lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or legal controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

9

reported feeling well with a good energy level. The record indicates his pacemaker fires only rarely.[3] The record shows that since the attainment of age 18 in January 2007, the claimant has reported doing well. On November 8, 2007, he reported his pacemaker had last fired on August 5, 2007, and prior to that, it had fired on June 14, 2006. Echocardiograms have shown good left ventricular heart function with a normal ejection fraction. While the undersigned recognizes the claimant should avoid heavy exertion due to his underlying heart condition, he retains the ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally. There is nothing in the record that indicates the claimant cannot walk and/or stand for at least 6 hours of an 8-hour workday, with the usual breaks....The undersigned does recognize[] the claimant should avoid hazards due to the possibility of his pacemaker firing. **These findings are not inconsistent with the opinion of Dr. King, the claimant's treating cardiologist.**

(Tr. 17-18) (emphasis added).

Plaintiff again argues that, because the ALJ did not have the benefit of a "full and fair record," he incorrectly determined that Morris was capable of the full range of light work. Specifically, Morris claims that Dr. King's opinions "directly conflict with the ALJ's own finding that Mr. Morris can perform the exertional demands of light work." Doc. # 21, p. 3-4. Plaintiff emphasizes additional medical records he provided in conjunction with his reply. *See* Pl.'s Reply Br., Exs. A-C, E-F, Doc. # 21; Ex. D, Doc. # 26. Plaintiff notes the "Forms to Request Medical Opinions" completed by Dr. King, doc. # 21-5. Dr. King opines that Morris has the following limitations and abilities: Morris can work 6 hours per day; Morris can stand for 15 minutes at one time; Morris can sit for 2 hours at one time; Morris can lift 20 pounds on both an occasional and frequent basis; and Morris does not need to elevate his legs during an 8-hour

---

[3] In his original brief, plaintiff indicated that his pacemaker "went off seven times last year." Doc. # 17, p. 11. This is what Ms. Reppond testified to at the hearing; therefore, "last year" would mean 2008, as the hearing was held in 2009. (Tr. 17). However, plaintiff's reply is silent as to the "seven times" his pacemaker allegedly fired in 2008; rather, the reply and its exhibits concern the firing of Morris' pacemaker in 2005 and 2006. Plaintiff attaches medical records from April 3, 2005 (Ex. A, doc. # 21-1); April 11, 2005 (Ex. B, doc. # 21-2); July 31, 2005 (Ex. C, doc. # 21-3); and June 14, 2006 (Ex. D, doc. # 26). There is no evidence that Morris' pacemaker fired "seven times" during the year 2008, contrary to plaintiff and Ms. Reppond's assertions at the hearing.

workday. Doc. # 21-5, pp. 2, 4. In the "Comments" section, Dr. King writes that plaintiff "may be unable to obtain [a] job due to frequent medical needs." *Id.* at p. 2. Dr. King also indicated that Morris suffers from [w]eakness and fatigue due to cardiac condition." *Id.* at p. 3. Finally, Dr. King marks Morris as being in NYHA Class II,[4] defined as "patients with slight, mild limitation of activity; they are comfortable with rest or with mild exertion." *Id.* These forms are all dated September 16, 2009.

      The undersigned agrees that the incomplete nature of the record requires a reversal. While there are similarities in the definitions of "light work" and NYHA "Class II," Dr. King's indicates that plaintiff can only stand for 15 minutes at a time and can only work 6 (six) hours per day. Such findings could mean that plaintiff is unable to work a standard 8-hour workday. However, Dr. King does not indicate whether this six hours includes a break for lunch, or any 15-minute breaks. Further, Dr. King's finding that Morris suffers from weakness and fatigue was supported by plaintiff's own assertions at his hearing. As the ALJ did not have the benefit of these new records at the time of the hearing, the ALJ was unable to further develop testimony from Dr. King to clarify his meaning regarding the length of time Morris can stand and walk, the length of time he can work per day, and the extent of the weakness and fatigue he suffers. In addition, the ALJ did not fully question Morris as to how the weakness and fatigue he suffers prohibits him from working. For these reasons, reversal is warranted.

**IV.**    **Steps Four and Five**

---

[4] "NYHA" is the New York Heart Association, which periodically publishes "a classification of patients with cardiac disease based on clinical severity and prognosis" in the <u>Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Great Vessels</u> (Little, Brown & Co. 1994). <u>American Heart Association</u>, available at http://www.americanheart.org

At Step Four of the sequential evaluation process, the ALJ determined that plaintiff has no past relevant work. 20 C.F.R. § 416.965. (Tr. 18). At Step Five, the ALJ then determined that there are jobs that exist in significant numbers in the national economy that Morris can perform. (Tr. 18). Morris asserts that the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that plaintiff can perform. Doc. # 17, p. 13.

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the relevant period is also not supported by substantial evidence.

## CONCLUSION

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of October, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE